IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) | CIVIL ACTION NO. |
| Plaintiff, | ) ) ) | COMPLAINT 3:24-cv-310-SA-RP |
| v. | ) ) ) | |
| INTREPID GYMNASTICS, LLC | ) ) ) | |
| Defendant. | ) | JURY TRIAL DEMAND |

# COMPLAINT

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, as amended (Title VII), and Title I of the Civil Rights Act of 1991, (CRA), 42 U.S. C. § 1981a to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Ashlyn Mueller (Mueller) and a class of female employees who were adversely affected by such practices. As alleged with greater particularity below, Plaintiff, Equal Employment Opportunity Commission (Commission), alleges Defendant Intrepid Gymnastics, LLC (Defendant Intrepid), subjected Mueller and a class of aggrieved female employees, some minors, to unlawful harassment and a hostile work environment because of sex, female.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) and (3) (Title VII), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The unlawful employment practices alleged in this Complaint were committed within the jurisdiction of the United States District Court for the Northern District of Mississippi.

## THE PARTIES

3. Plaintiff, the Commission, is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by §706(f)(1) and (3) of Title VII, 42 U.S.C. §2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Intrepid operated as a for-profit Limited Liability Company in the state of Mississippi and the City of Horn Lake.

5. At all relevant times, Defendant Intrepid continuously employed at least 15 employees.

6. At all relevant times, Defendant Intrepid operated as an employer engaged in an industry affecting commerce within the meaning of §701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

7. More than thirty (30) days prior to the institution of this lawsuit, Mueller filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant Intrepid.

8. The Commission issued a Letter of Determination on June 21, 2023, to Defendant Intrepid finding reasonable cause to believe Title VII was violated and inviting Defendant Intrepid to join with the Commission in informal methods of conciliation to endeavor to eliminate the

unlawful employment practices and to provide appropriate relief for the Ms. Mueller and a class of similarly aggrieved female employees.

9. The Commission engaged in communications with Defendant Intrepid to provide Defendant Intrepid the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10. The Commission was unable to secure from Defendant Intrepid a conciliation agreement acceptable to the Commission.

11. On August 16, 2023, the Commission issued Defendant Intrepid a Notice of Failure of Conciliation advising Defendant the Commission could not secure from Defendant Intrepid a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## BACKGROUND

13. On September 11, 2016, Austin Hall (A. Hall) and his father, Jonathan Hall (J. Hall), formed Defendant Intrepid Gymnastics, LLC in Horn Lake, Mississippi.

14. A. Hall owns sixty-six and two-thirds of the company and J. Hall owns the remainder.

15. Defendant Intrepid, a gym, provides gymnastics, tumbling, and cheer classes, along with team sports opportunities to students ranging in age from around 3 to 18 years old.

16. Defendant Intrepid employs teenage women and 18- and 19-year-old adult females as part-time coaches for its classes.

17. Defendant Intrepid pitches itself as a family business offering "a safe and comfortable environment to teach the sport of gymnastics and tumbling."

## STATEMENT OF CLAIMS

**Sexual Harassment Claim of Ashlyn Mueller**

18. On or about April 2022, Defendant Intrepid engaged in unlawful employment practices at its Horn Lake, Mississippi facility in violation of Title VII, Section 703(a), 42 U.S.C. § 2000e-2(a).

19. The unlawful employment practices include subjecting Ashlyn Mueller to unwelcome sexual harassment because of her sex, female.

20. On or around June 25, 2018, Mueller began her employment with Defendant Intrepid as a fifteen-year-old Gymnastics Team Coach.

21. As a Gymnastics Team Coach, Mueller coached the competitive teams.

22. Mueller worked for almost four years until she resigned on August 3, 2022.

23. Mueller, like most of the young females who worked for Defendant Intrepid, worked an average of 15 hours a week.

24. A. Hall, then 25 years old in 2018, supervised Mueller.

25. In April 2022, three months after her nineteenth birthday and 30 days or less before his 29th birthday, A. Hall began sexually harassing Mueller, continuing his persistent practice of sexually harassing young female employees that began in 2019.

26. A. Hall's harassment occurred for the next couple of months, through July 30, 2022, including face-to-face and text messaging.

27. Donald Holmes (Holmes), the tumbling coach, safety coordinator, and acting gym manager in 2022, learned that A. Hall harassed female employees on Fridays, Holmes' day off.

28. On April 12, 2022, Mueller and A. Hall worked as the only employees in the gym, A. Hall said, he wanted to "f---" Jourdan Wofford (J. Wofford), his wife's sister.

29. Mueller believes J. Wofford was 19 or 20 years old in 2022.

30. Then, A. Hall asked how much it would cost to sleep with Mueller's co-workers. And he asked how much it would cost for a threesome amongst him, J. Wofford, and Mueller.

31. Over the next couple of months, A. Hall "consistently" asked Mueller how much it would cost for Mueller to sleep with him.

32. A. Hall asked Mueller if J. Wofford would ever sleep with him and whether J. Wofford had nude photos on her phone.

33. A. Hall asked Mueller to send him the nude photos. She refused.

34. A. Hall offered Mueller $2,000 to have sex with him. Mueller refused.

35. Mueller will testify one time, A. Hall pulled her into the coaches' office and said, he did not "f---without preview."

36. A. Hall asked Mueller to send him nude pictures of herself and nude pictures of J. Wofford. Mueller refused.

37. A. Hall said he was only asking for a picture of her "ass cheek" and not asking her to perform a lewd act.

38. On one occasion, A. Hall asked Mueller to "come to his car so we could do stuff."

39. A. Hall repeated his requests for sexual favors by asking Mueller again, "how much would it cost" for her "to sleep with" him.

40. Mueller will testify A. Hall appeared at her car one night and attempted to persuade her to change her mind about engaging in sex with him.

41. A. Hall told Mueller when women saw his private parts, they changed their mind.

42. Consistent with his practice of sharing his prior sexual acts with other young employees to reduce his target's resistance to his sexual advances, A. Hall told Mueller in the middle of her coaching that he had sex with another teen, then 17 years old.

43. N. Dickey, the teen, corroborated A. Hall's statement to the Horn Lake Police Department (HLPD).

44. Around May 11, 2022, Mueller told J. Wofford, sister of A. Hall's wife Katlyn, and Hayleigh Wofford (H. Wofford), Katlyn's sister-in-law, about A. Hall's sexual advances.

45. Both J. Wofford and H. Wofford shared they felt uncomfortable around A. Hall. After talking with J. and H. Wofford, Mueller became increasingly uncomfortable.

46. When A. Hall discovered J. Wofford and H. Wofford knew about his advances towards Mueller, A. Hall approached her and asked her whether she had seen "a dick picture" before.

47. A. Hall then told Mueller the size of his penis. He said he could send the picture through Instagram and gave her until 10:00 p.m. to decide if she wanted the picture.

48. Mueller told him, "No! I don't want to do this; this is uncomfortable." A. Hall continued to text and call her.

49. The unlawful sexual harassment was severe or pervasive to alter the terms and conditions of her employment and to create a sexually hostile work environment.

50. On July 30, 2022, Mueller prepared a complaint of A. Hall's sexual harassment and gave it to Holmes the next day.

51. Holmes approached A. Hall and J. Hall and shared the contents of Mueller's complaint.

52. Holmes also requested permission to investigate the allegations.

53. Although A. Hall and J. Hall denied Holmes' request, they hired a law firm to investigate.

54. Holmes resigned on August 2, 2022. Mueller resigned the following day.

55. While Defendant Intrepid employed Mueller, Defendant Intrepid lacked any sexual harassment policies and failed to train its employees on conduct that constituted sexual harassment.

56. A. Hall was owner of the facility and Mueller feared him.

57. A. Hall's practices and Defendant Intrepid's failures deprived Mueller of equal employment opportunities and otherwise adversely affected her status as an employee because of her sex, female.

58. The unlawful employment practices complained of above were intentional.

59. The unlawful employment practices complained of were done with malice or with reckless indifference to Mueller's federally protected rights.

**Sexual Harassment Claims of Aggrieved Class of Females**

60. On or about December 2019, Defendant Intrepid engaged in unlawful employment practices at its Horn Lake, Mississippi facility in violation of Title VII, Section 703(a), 42 U.S.C. § 2000e-2(a).

61. The unlawful employment practices include subjecting Dickey and other females as a class to unwelcome sexual harassment because of their sex, female.

62. Dickey was 17 years old when Defendant Intrepid hired her in 2019 to work as a recreational gymnastics coach.

63. While working as a coach A. Hall repeatedly approached Dickey about sex.

64. A. Hall asked about the number of sexual partners Dickey had; how many times she had sex; and the size of her prior partners' private parts.

65. A. Hall sexually assaulted Dickey before closing one night in 2020 when she was 17 years old.

66. A. Hall called Dickey into the coaches' room, claiming he needed to speak with Dickey.

67. Dickey reported once she entered the coaches' room, A. Hall began kissing her, "ben[t] her over the office desk and start[ed] to digitally penetrate her vagina."

68. Dickey will testify she froze and blacked out.

69. Afterwards, A. Hall asked Dickey, "what do you want for this." Dickey responded she never wanted it to recur and ran from the room.

70. Dickey never shared with anyone what had occurred until Mueller and the other girls started talking about A. Hall's sexual harassment of them.

71. A. Hall also told Dickey about having sex with H. Wofford in the gym.

72. Dickey talked to Hayleigh who confirmed her experience with A. Hall.

73. Maci Myers (Myers), 18, started working at Defendant Intrepid in 2021 for 5 months and left in 2022.

74. Myers served as gymnastics coach for children three to ten-years-old at night.

75. A. Hall made unwelcomed comments to Myers and sent her inappropriate text messages on multiple occasions.

76. Five or more times during her employment, A. Hall would tell Myers she was awesome, he was glad he hired her, and talked about her back side.

77. Myers stated A. Hall made the same comments to other girls and some were under 17 years old.

78. Savannah Beech (Beech), then 17 years old, remained employed a couple weeks after Mueller resigned in August 2022.

79. A. Hall made inappropriate comments to Beech about wanting to have sex with J. Wofford. A. Hall talked about what he did to Mueller and other girls.

80. The unlawful sexual harassment was severe or pervasive to alter the terms and conditions of the employment of Dickey, Myers, Beech, and a class of female employees and to create a sexually hostile work environment.

81. A. Hall owns over 66 2/3% of Defendant Intrepid and J. Hall owns the remaining 33 1/3%.

82. A. Hall and J. Hall admit the former is the president and owner.

83. A. Hall is an "alter ego" or "proxy" of Defendant Intrepid.

84. A. Hall had the authority to take tangible employment actions against the young employees.

85. He had the authority to effect a significant change in their employment status.

86. A. Hall could hire, fire, or reassign an employee with significantly different responsibilities.

87. A. Hall fired Shelby Baker, a preschool gymnastics coach, and prohibited Mueller from traveling with her teams to out of town events.

88. Defendant Intrepid lacked an effective sexual harassment policy.

89. While Defendant Intrepid's EEO Policy prohibits any form of harassment based on the protected characteristics, including sex, the policy fails to define what constitutes sexual harassment.

90. The Policy fails to provide details on reporting harassment, to whom reports of harassment should be made if the owner is the alleged discriminating official, or the consequences for engaging in harassment.

91. Defendant Intrepid did not ensure that all employees, including its managers, knew about the policy or acknowledged receiving it.

92. Defendant Intrepid did not conduct any training on harassment during Mueller's tenure that began in 2018.

93. Defendant Intrepid's supervisors were not trained on the conduct constituting sexual harassment and were not instructed on documenting or investigating claims of sexual harassment.

94. Defendant Intrepid's failures and A. Hall's practices from 2019 complained of in the paragraphs above deprived Dickey, Beech, Myers, and other aggrieved females, as a class, of equal employment opportunities and otherwise adversely affected their status as employees because of their sex, female.

95. The unlawful employment practices complained of in the paragraphs above were intentional.

96. The unlawful employment practices complained of in the paragraphs above were done with malice or with reckless indifference to the federally protected rights of Dickey, Beech, Myers, and other aggrieved females as a class.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

97. Grant a permanent injunction enjoining Defendant Intrepid and its owners, officers, agents, servants, and employees, and all persons in active concert or participation with them from

engaging in harassment or any other employment practice which discriminates on the basis of sex, female.

98. Order Defendant Intrepid to institute and carry out policies, practices and programs which provide equal employment opportunities for female individuals and eradicate the effects of its past and present unlawful employment practices.

99. Order Defendant Employer to make whole Mueller and the class of aggrieved females, including Dickey, Myer, and Beech, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above in amounts to be determined at trial.

100. Order Defendant Intrepid to make whole Mueller and a class of aggrieved females by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain and suffering, inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

101. Order Defendant Intrepid to pay Mueller and a class of aggrieved females punitive damages for the malicious and reckless conduct described above, in amounts to be determined at trial.

102. Grant such further relief as the Court deems necessary and proper in the public interest.

103. Award the Commission its costs in this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

KARLA GILBRIDE
General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

FAYE A. WILLIAMS
Regional Attorney
TN Bar No. 011730
faye.williams@eeoc.gov

*/s/ Roslyn Griffin Pack*
ROSLYN GRIFFIN PACK
Trial Attorney
MS Bar No. 103317
roslyn.griffin-pack@eeoc.gov

SARAH JENKINS
Trial Attorney
AR Bar No. 97046
sarah.jenkins@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Memphis District Office
200 Jefferson Avenue, Suite 1400
Memphis, TN 38103
(901) 685-4609

GARY SULLIVAN
Assistant Regional Attorney
AR Bar No. 92051
gary.sullivan@eeoc.gov

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Little Rock Area Office
820 Louisiana Street, Suite 200
Little Rock, AR 72201
(501) 900-6140